## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **JONATHAN FOLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **13-12107-FDS** |
| | ) | |
| **WELLS FARGO BANK, N.A, s/b/m** | ) | |
| **WACHOVIA MORTGAGE, F.S.B., f/k/a,** | ) | |
| **WORLD SAVINGS BANK, F.S.B.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)

## MEMORANDUM AND ORDER ON
## MOTION TO DISMISS

**SAYLOR, J.**

This action arises from an allegedly unlawful foreclosure.  Plaintiff Jonathan Foley contends that defendant Wells Fargo, N.A., improperly denied him a loan modification on his mortgage, thereby leading to foreclosure.  Defendant has moved to dismiss the action for failure to state a claim upon which relief can be granted.  For the reasons set forth below, the motion will be granted.

**I.     Background**

Except where noted, the following facts are presented as stated in the complaint.

**A.     Factual Background**

On March 7, 2005, Jonathan Foley purchased a home at 61 Oceanside Drive, Unit 61, Hull, Massachusetts.  (Compl. ¶¶ 1, 3).  In order to purchase the $650,000 home, Foley obtained a $450,000 "Pick-a-Payment" mortgage from World Savings Bank, FSB, a predecessor of defendant Wells Fargo, N.A.  (Compl. ¶¶ 3-5).  Initially, Foley made $1,670.42 monthly

mortgage payments.  (Compl. ¶ 6).  He lost his job in October 2008 and suffered multiple personal hardships.  However, he continued making his payments until October 2010.  (Compl. ¶¶ 8-14).

According to the complaint, Foley spoke with multiple representatives of defendant in pursuit of a loan modification.  In January 2009, one representative informed him that the company could not provide any relief in payment at that time.  (Compl. ¶ 10).  Between October 2010 and August 2011, multiple representatives were unable to provide him a loan modification and sought only to know how soon Foley could make a payment.  (Compl. ¶ 15).  From April 2011 through November 2011, various representatives told him that he was not qualified for any loan modifications, and that the only available relief was through the Home Affordable Modification Program ("HAMP").  (Compl. ¶ 17).

Ultimately, in November 2011 and at Foley's request, defendant sent Foley an application for a HAMP modification.  (Compl. ¶¶ 18-19).  Foley completed and returned the application shortly thereafter.  (Compl. ¶ 19).  The complaint alleges that in January 2012, he received a letter from defendant stating that it had not received his application.  (Compl. ¶ 20). Foley called defendant's Home Preservation Specialist, Angela Foster, multiple times, but she did not return his calls other than with letters regarding "short sale" or "deed-in-lieu of foreclosure" options.  (Compl. ¶ 20).

In February 2012, Foley received a notification that proceedings on his home would go forward.  (Compl. ¶ 21).  According to the complaint, Foley called defendant and explained that he had not heard about his modification application.  Defendant's representative informed him that his application may be lost or not processed yet because of the merger between Wells Fargo

and Wachovia, and suggested that he continue attempting to contact Foster.  (Compl. ¶ 21).

Despite his continued attempts, Foley did not hear back from Foster except regarding short sales

and deed-in-lieu of foreclosure.  (Compl. ¶ 22).

　　　　In August 2012, defendant sent Foley a Notice of Foreclosure.  (Compl. ¶ 23; Compl.,

Ex. 4).  Foley then called counsel for defendant, who told him to contact a new Home

Preservation Specialist, Jessica Steffen.  (Compl. ¶ 23).  According to the complaint, Foley

called Steffen, but she did not accept or return his calls.  (Compl. ¶ 24).  He eventually spoke

with her supervisor, who told him that his application was never received or was lost, and that a

new application would be mailed to him.  (Compl. ¶ 25).  Foley received, filled out, and returned

the application by December 2012, and timely provided additional documentation that Wells

Fargo requested.  (Compl. ¶¶ 26, 28).  Steffen called Foley and acknowledged receipt of the

application.  (Compl. ¶ 27; Compl., Ex. 5).

　　　　Foley received a February 18, 2013 letter denying his application for HAMP because his

proposed modified monthly payment amount would exceed 42% of his monthly gross income,

and a February 19, 2013 letter denying him the benefit of an unspecified modification program

on the basis of "excessive financial obligations."  (Compl. ¶ 29; Compl., Ex. 6).  He

subsequently attempted to contact by telephone and e-mail Steffen but did not receive any

response.  (Compl. ¶¶ 30-31).

　　　　On April 8, 2013, Wells Fargo notified Foley of its intention to foreclose on his home on

May 8, 2013.  (Compl. ¶ 32; Compl., Ex. 8).  He called Wells Fargo in response, and eventually

spoke with Chad Marrone, defendant's legal counsel.  Marrone told him that he could not assist

him but that Foley could attempt to negotiate with Wells Fargo regarding a loan modification.

(Compl. ¶ 33).  Foley called multiple departments at Wells Fargo.  According to the complaint, one representative told him that he "need[ed] to man up and move out."  None provided any assistance.  (Compl. ¶ 34).

On April 8, 2013, Foley contacted the Office of the Attorney General for Massachusetts. (Compl. ¶ 35).  That office helped Foley obtain a delay in the foreclosure sale and an opportunity to discuss his mortgage.  (Compl. ¶ 36).  The Attorney General's office also suggested that Foley file a new application for a loan modification and put him in touch with a new Home Preservation Specialist, Sarah Nuncio.  (Compl. ¶ 37).  After multiple calls, Foley eventually spoke with Nuncio on May 8, 2013.  He received from her a new HAMP application on May 22, 2013.  (Compl. ¶¶ 39-41).  He completed the application, and Wells Fargo accepted it for processing on May 29, 2013.  (Compl. ¶ 42).

On June 26, 2013, the Attorney General's Office informed Foley that the processing of his application had been completed.  On July 5, 2013, he received two letters dated June 27, 2013, denying his application for HAMP and for other unspecified mortgage assistance. (Compl. ¶¶ 44-45; Compl., Ex. 10).  The letters explained that he had been denied on the basis of "excessive debts."  (Compl. ¶ 45).  Foley contends that he spoke to a Wells Fargo representative thereafter, who stated that in order to qualify for HAMP or "other" modification programs, Foley must have a monthly income of $10,000.  (Compl. ¶¶ 47-48).  Foley again contacted the Attorney General's Office, who contacted Wells Fargo seeking the documents supporting their determination and the name of the unspecified loan modification program.  (Compl. ¶¶ 50-51).

Foley received a notice of continuation to foreclose on July 9, 2013, and then a call from Justin Forbes of Wells Fargo's Executive Complaint Department.  (*See* Compl., Ex. 11).  Forbes

explained that Wells Fargo had denied Foley for modification under HAMP and MAP.  Foley

asked whether he had been considered for MAP2R modification.  According to Foley, Forbes

gave multiple answers; he initially stated no, then said yes, then possibly, then that MAP2R was

the same program as MAP.  He indicated that he would consult with the legal department as to

whether Foley had been provided the requisite process.  (Compl. ¶ 53; Compl., Foley Aff. ¶ 48).

On July 22, 2013, Forbes called to inform Foley that he had been considered for all

modifications and denied for each one.  (Compl., Foley Aff. ¶ 49).  Forbes called again on July

30 and stated that Foley would receive a detailed denial letter in a few days.  (Compl., Foley Aff.

¶ 51).

On July 30, 2013, Well Fargo sent a letter to Foley stating that it had considered him for

a MAP2R loan modification and denied him one because the modified payment would exceed

34% of his gross monthly income.  (Def.'s Opp. Mot. Prelim. Inj., Ex. R).

**B.      Procedural Background**

Foley filed this action *pro se* in Superior Court on August 1, 2013, asserting claims for

breach of contract; violation of Mass. Gen. Laws ch. 244, §§ 35A and 35B; violation of Mass.

Gen. Laws ch. 93A, § 11; and breach of the implied covenant of good faith and fair dealing.  He

simultaneously petitioned for a temporary restraining order.  Wells Fargo removed to this Court

on August 28, 2013.  On October 2, 2013, Foley moved again for a temporary restraining order

and preliminary injunction to prevent Wells Fargo from conducting a scheduled foreclosure sale.

The temporary restraining order was granted pending a hearing on the preliminary injunction.

After holding an evidentiary hearing on November 20, 2013, this Court denied the motion for a

preliminary injunction.

On October 15, 2013, Wells Fargo moved to dismiss the action for failure to state a claim upon which relief can be granted.

### C.     The Wells Fargo Settlement

In May 2011, Wells Fargo settled a class action concerning the "Pick-a-Payment" mortgage program formerly offered by a predecessor, World Savings Bank, FSB.  (Compl., Ex. B).  *See In re Wachovia Corp. "Pick-A-Payment" Mortgage Mktg. & Sales Practices Litig.*, 2011 WL 1877630 (N.D. Cal. May 17, 2011).  The parties agree that Foley is a member of Settlement Class B, because he received a Pick-a-Payment mortgage on his primary residence between August 1, 2003, and December 31, 2008, and at the time of the settlement, he still had the loan and was not in default.  (*See* Compl., Ex. B at 30-31).  In part, the settlement provided that "each Settlement Class B Member in Imminent Default . . . first shall be considered for a HAMP Modification."  Then, "Members who do not qualify for or elect not to accept a HAMP Modification *shall be considered* for a MAP2R Modification."  (Compl., Ex. B at 35) (emphasis added).  The settlement describes a "MAP2R Waterfall" setting out how to evaluate a class member's debts in order to calculate his debt-to-income ratio (DTI).[1]  If, ultimately, "a DTI [ratio] of 31% cannot be achieved," then Wells Fargo is not required to offer a MAP2R modification to that class member.  (Compl., Ex. B at 36-37).  The settlement agreement is

---

[1] The "front-end" DTI ratio is the debt-to-income ratio of housing payments (including rent or mortgage, principal, interest, taxes, and insurance) to gross monthly income.  The "back-end" DTI ratio is the ratio of all recurring obligations (including housing payments, credit cards, child support or alimony, and auto payments).  *See In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*, 277 F.R.D. 586, 590 (S.D. Cal. 2011) (describing DTI); 12 C.F.R. § 1026, App. Q (forthcoming regulation for determining monthly debt and income).  Federal agencies and banks use the DTI ratio to determine whether a person can afford a particular home mortgage.  A higher DTI ratio indicates that the home is more unaffordable.  *See* U.S. Department of Housing and Urban Development, Mortgagee Letter, *Making Home Affordable Program: FHA's Home Affordable Modification Loss Mitigation Option*, 2009 WL 3348117, at *2 (July 30, 2009) ("To be eligible under FHA-HAMP, the front end debt to income ratio must be as close as possible, but not less than, 31 percent. . . .  The back end debt to income ratio must not exceed 55 percent . . . .").

governed by the laws of the State of California.  (Compl., Ex. B at 57).

## II.     Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). *See also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

## III.    Analysis

### A.      Breach of Contract

Plaintiff alleges that Wells Fargo breached the terms of the *In re Wachovia Pick-a-*

*Payment* settlement agreement by failing to review his mortgage for a loan modification under MAP2R.

Under California law, "an action for breach of contract requires:  (1) existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) resulting damages to plaintiff." *Bellevue v. Prudential Ins. Co. of Am.*, 23 F. App'x 809, 810 (9th Cir. 2001) (citing *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App.3d 1371 (1990)).

Defendant reads plaintiff's breach of contract claim as based entirely on its failure to provide him a loan modification.  The complaint alleges, correctly, that the settlement agreement does not require Wells Fargo to provide a loan modification to every class member, merely to review every member for specific loan modification programs.  However, defendant reads the complaint too narrowly.  In fact, plaintiff asserts not only that defendant failed to provide him a MAP2R modification, but also that it failed even to consider him for one.

Here, the complaint alleges that a representative of Wells Fargo, Justin Forbes, informed him on July 30, 2013, that he would receive a detailed modification denial letter a few days later. (Compl., ¶ 54).  The next day, August 1, Foley filed his complaint.  Defendants have submitted a copy of a letter dated July 30, indicating that Foley had been considered and rejected for both the HAMP and MAP2R programs.  (Def.'s Opp. Mot. Prelim. Inj., Ex. R).

Ordinarily, courts should not consider documents outside the pleadings at the motion to dismiss stage. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  However, a court may take into account "documents the authenticity of which are not disputed by the parties" and "documents sufficiently referred to in the complaint." *Griswold v. Driscoll*, 625 F. Supp. 2d 49, 55 (D. Mass.

2009) (citing *Watterson*, 987 F.2d at 3-4).  The letter is referred to in the complaint (although as something that will arrive in the future, not something that defendant had yet seen).  Defendant then attached the referenced letter to its opposition to plaintiff's motion for a preliminary injunction.  Plaintiff did not contest the authenticity of the letter.  Furthermore, plaintiff has offered no evidence, and indeed made no suggestion, that the decision to deny him a modified loan under either HAMP or MAP2R was based on an erroneous calculation or a false factual premise.

Accordingly, it appears that defendant performed its obligation under the settlement agreement to consider plaintiff for MAP2R.  The motion to dismiss Count 1 for breach of contract will therefore be granted.

**B.**      **Sections 35A and 35B**

Plaintiff also contends that defendant has not complied with Mass. Gen. Laws ch. 244, §§ 35A and 35B.  Section 35A requires a mortgagee to send a notice of default/right-to-cure letter to a mortgagor before accelerating or foreclosing on a mortgage, and plaintiff contends that he received no such letter.  Section 35B requires creditors to make a good faith effort to avoid foreclosure, which plaintiff contends it did not.  Defendant, in turn, states that it complied with these statutes, and that in any event the federal Home Owners' Loan Act ("HOLA") preempts the statutes.

Taking the second argument first, "[t]he doctrine of federal preemption is rooted in the Supremacy Clause, which provides that 'the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding.'  U.S. Const. art. VI, cl. 2."

*SPGGC, LLC v. Ayotte*, 488 F.3d 525, 530 (1st Cir. 2007) (alteration in original).  Whether a federal law preempts depends on Congress's intent to supplant state law.  *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 30 (1996).  Federal statutes as well as federal regulations can be preemptive.  *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985).

In 1933, Congress enacted HOLA "to provide emergency relief with respect to home mortgage indebtedness" through "a radical and comprehensive response to the inadequacies of the existing state systems."  *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*,  458 U.S. 141, 159–60 (1982).  The Office of Thrift Supervision ("OTS") administers HOLA and has broad powers to regulate federal savings associations.  *Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 91 (D. Mass. 2012).  OTS explicitly states that it "occupies the entire field of lending regulation for federal savings associations," including as to the "terms of credit" and the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  12 C.F.R. § 560.2.  *See SPGGC, LLC v. Ayotte*, 488 F.3d 525, 535 (1st Cir. 2007).  On the other hand, that regulation also carves out state laws that "only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section."  12 C.F.R. § 560.2(c).

Here, World Savings Bank, the original mortgagee, was a federally chartered savings bank organized and operating under HOLA.  *See DeLeon v. Wells Fargo Bank*, 729 F. Supp. 2d 1119, 1121 (N.D. Cal. June 9, 2010).  World Savings Bank later changed its name to Wachovia Mortgage, FSB, and then merged into Wells Fargo Bank, N.A., but the HOLA preemption still applies.  *DeLeon*, 729 F. Supp. 2d at 1126.  (*Cf.* Mot. Dismiss, Ex. A).  Sections 35A and 35B do

seek to regulate "[t]he terms of credit, including . . . adjustments to the interest rate, balance, payments due, or term to maturity of the loan . . . ." 12 C.F.R. § 560.2(b)(4). *See Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 102-03 (D. Mass. 2012) (finding that HOLA preempts Section 35A as to federally chartered bank). Therefore, this federal regulation preempts Sections 35A and 35B. Accordingly, the motion to dismiss Count 2 of the complaint will be granted.

### C.  Chapter 93A

Mass. Gen. Laws ch. 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Plaintiff contends that defendant violated this statute by providing him misinformation, failing to inform him of his rights, ignoring his requests to negotiate, and failing to perform its obligations under the settlement.

However, prior to filing suit, Chapter 93A requires that the allegedly injured individual issue a written demand for relief to the business at least thirty days prior to the filing of a 93A claim in court. Mass. Gen. Laws ch. 93A, § 9(3). The complaint fails to plead that plaintiff sent such a letter to defendant, and therefore has failed to meet a jurisdictional prerequisite to suit. *See Roberts v. Crowley*, 538 F. Supp. 2d 413, 421 (D. Mass. 2008). Accordingly, the motion to dismiss Count 3 will be granted.

### D.  Breach of Implied Covenant of Good Faith and Fair Dealing

Finally, plaintiff alleges that defendant breached the implied covenant of good faith and fair dealing. Specifically, the complaint alleges that defendant failed to perform in good faith the terms of the settlement agreement. It cites as an alleged examples that defendant employed representatives who do not understand the loan modification programs and cannot communicate

11

with borrowers about them, and that defendant failed to send letters as to whether plaintiff had been denied a MAP2R modification.

In California, "[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654 (1958). What conduct violates the covenant is "circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992). That is, the covenant exists "to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988).

Defendant first contends that there are no terms in the settlement agreement that provide a right to good customer service. But again, he reads the complaint too narrowly, particularly in light of plaintiff's *pro se* status. Plaintiff's allegations that defendant's inability to communicate effectively about MAP2R prevented plaintiff from being considered for such a modification could state a claim for breach of the implied covenant of good faith and fair dealing. *See Lueras v. BAC Home Loans Servicing, LP*, 163 Cal. Rptr. 3d 804, 827 (Cal. App. Ct. 2013) (stating that implied covenant of good faith and fair dealing included bank's duty to work with borrower to implement foreclosure prevention alternative); *Bushell v. JPMorgan Chase Bank, N.A.*, 163 Cal. Rptr. 3d 539, 550 (Cal. App. Ct. 2013) (refusing to dismiss breach of implied covenant claim where bank "is alleged to have strung plaintiffs along, without confirming or denying a permanent [HAMP] modification"); *see also Akar v. Fed. Nat. Mortgage Ass'n*, 845 F. Supp. 2d 381, 400 (D. Mass. 2012) (denying judgment on pleadings as to breach of implied covenant

claim where bank had foreclosed in spite of assurance that it would not do so while loan modification application was pending).

However, defendant did consider plaintiff for MAP2R, and its poor communication does not appear to have ultimately and substantially interfered with plaintiff's rights under the contract.  Accordingly, the motion to dismiss Count 4 will be granted.

**IV.**      **<u>Conclusion</u>**

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

                                          /s/ F. Dennis Saylor          
                                         F. Dennis Saylor IV
Dated: December 9, 2013                  United States District Judge