UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| JONATHAN FOLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-12107-LTS |
| ) | |
| WELLS FARGO BANK, N.A., ) | |
| s/h/m to Wachovia Mortgage FSB, ) | |
| f/k/a World Savings FSB, ) | |
| ) | |
| Defendant. ) | |

ORDER ON DEFENDANT'S MOTIONS TO TRANSFER AND DISMISS AND
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

June 5, 2015

SOROKIN, J.

Plaintiff Jonathan Foley ("Foley") brings four claims against Wells Fargo Bank, N.A. ("Wells Fargo" or "the bank"). Foley contends that Wells Fargo (1) failed to abide by the terms of a class action settlement agreement which required Wells Fargo to consider Foley for certain mortgage modification programs and (2) violated various Massachusetts state laws. Wells Fargo seeks to foreclose on Foley's home. Pending before the Court are three motions: Wells Fargo's Motion to Transfer this case to the Northern District of California, Doc. No. 80, Wells Fargo's Motion to Dismiss, Doc. No. 85, and Foley's Motion for a Preliminary Injunction, Doc. No. 64. The Court DENIES Wells Fargo's Motion to Transfer and DENIES IN PART and ALLOWS IN PART Wells Fargo's Motion to Dismiss. The Court ALLOWS Foley's Motion for a Preliminary Injunction and enjoins Wells Fargo from foreclosing on the residence at 61 Oceanside Drive, Unit 61, Hull, Massachusetts.

## I.   Background

"To set the factual stage for this case, we rely on the allegations set forth in Foley's complaint, the documents attached to the complaint, and relevant public records." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 67 (1st Cir. 2014).  The Court construes "the well-pleaded facts in the light most favorable to the plaintiffs . . . accepting their truth and drawing all reasonable inferences in plaintiffs' favor." *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014).

### A.  Foley's Mortgage with Wells Fargo[1]

Foley purchased a home in Hull, Massachusetts in March 2005.  Doc. No. 59 ¶ 3.  To finance this purchase, Foley obtained a "Pick-a-Payment" loan – an adjustable-rate home mortgage loan.  *Id.* ¶¶ 2, 5.  Foley lost his job in October 2008.  *Id.* ¶ 9.  Foley continued to pay his mortgage, but called Wells Fargo in January 2009 to discuss fixing his interest rate and his unemployment status.  *Id.* ¶¶ 9, 10.  The bank's representative told Foley that if he converted his mortgage to the fixed rate option, his monthly mortgage payment would more than double due to the negative amortization of the loan.  *Id.* ¶ 10.  The bank's representative told Foley that in order for the bank to assist Foley, he would first need to obtain a job and income.  *Id.*

Foley did ultimately obtain a job in January 2010.  *Id.* ¶ 9.  In October 2010, Foley's father filed for bankruptcy and Foley became the sole provider of financial and medical support for his divorced mother.  *Id.* ¶ 12.  At that time, Foley stopped paying his mortgage in full.  *Id.* ¶ 9.  Foley made several partial mortgage payments between October 2010 and April 2011.  *Id.*

---

[1] Although Foley obtained the mortgage from World Savings Bank FSB, "Wells Fargo Bank, N.A. is the successor-by-merger to Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 68 (1st Cir. 2014).  Following the convention of the First Circuit, the Court refers to these entities interchangeably as "Wells Fargo" or "the bank." *Id.*

2

¶ 16.  Foley continued to call the bank to request loan modifications, but the bank's representatives told him "that he was not qualified for any propriety [sic] loan modifications and that the only relief available was [] HAMP [the federal government's Home Affordable Mortgage Program]."  *Id.* ¶¶ 15, 17.  Foley requested to participate in HAMP, and the bank's representatives stated that a HAMP modification application would be sent to him.  *Id.* ¶ 18.

### B. The Pick-A-Payment Class Action Settlement[2]

At this same time, presumably unbeknownst to Foley, he was a member of a class action in the Northern District of California regarding Pick-a-Payment loans.  The class representatives and the bank reached a settlement agreement, which the court approved in May 2011.  Doc. No. 207.  The parties agree that Foley is a member of Settlement Class B.  *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 68 (1st Cir. 2014).  As a Settlement Class B member, Foley was entitled to have Wells Fargo consider him for a HAMP modification and, if he did not qualify or accept a HAMP modification, to have Wells Fargo consider him for a MAP2R modification.  *Id.*  As the First Circuit described,

> "MAP2R" was a new proprietary modification program Wells Fargo created specifically for the settlement, and the step-by-step eligibility determination process for MAP2R (called the "waterfall" process) was spelled out in the agreement.  The bank was required to apply seven specific (and rather complicated) sequential steps until a debt-to-income ratio of 31 percent was reached for the borrower.  But if the bank followed the waterfall and could not reach 31 percent, it was not required to offer a MAP2R modification.  The settlement agreement also imposed certain "servicing commitments," created, according to the agreement, "[i]n order to ensure that Borrowers are appropriately considered for a MAP2R Modification in a timely manner."  The agreement required, for instance, that Wells Fargo provide class members with clear, written explanations of modification denials, and in any foreclosure-related communications, a notification that the borrower was still being considered for a modification.

---

[2] *See, e.g.*, *In re Wachovia Corp. "Pick-A-Payment" Mortgage Mktg. & Sales Practices Litig.*, No. 09-MD-02015-RS, 2015 WL 1744339, at *1 (N.D. Cal. Apr. 15, 2015) (describing the settlement and ruling on still-ongoing disputes between the parties).

3

*Id.* at 68-69.

### C. Foley's Continued Attempts to Avoid Foreclosure

Foley, still presumably unaware of the settlement, did not receive the HAMP modification application until November 2011 after numerous telephone inquiries to Wells Fargo. Doc. No. 59 ¶ 19. Foley filled out the application and returned it to the bank shortly thereafter. *Id.* In January 2012, Foley received a letter from the bank, stating that his application had not been received. *Id.* ¶ 20. Foley made numerous phone calls to the bank's Home Preservation Specialist ("HPS"), but she did not return his calls. *Id.* ¶¶ 20-21. Instead, Foley received letters from her regarding "short sale" or "deed-in-lieu of foreclosure" options.[3] *Id.* ¶ 22. In August 2012, Foley received a Notice of Foreclosure from Wells Fargo. *Id.* ¶ 23. Foley continued to call the HPS, but she did not accept or return his calls. *Id.* ¶ 24. After a few months, Foley was able to speak to the HPS's supervisor, who verified that Foley's application had not been received and informed Foley that Wells Fargo would send him a new application. *Id.* ¶ 25. In November or December 2012, Foley received a second HAMP application, which he returned to Wells Fargo by the end of December 2012. *Id.* ¶ 26.

Foley received two letters from Wells Fargo in February 2013; one letter rejected Foley from HAMP and the other informed Foley that Wells Fargo was unable to offer him a modification due to Foley's "excessive financial obligations," although the letter did not specify for which modifications Wells Fargo had considered Foley. *Id.* ¶ 29; *id.* at Ex. 6. Wells Fargo granted Foley an appeal, but sent Foley another Notice of Foreclosure. *Id.* ¶¶ 32-71. Foley continued to contact Wells Fargo; at one point, a bank representative told Foley that he "need[ed]

---

[3] "Both a 'short sale' and 'deed in lieu of foreclosure' are alternatives to foreclosure that still require the homeowner to forego ownership of his home. In a short sale, the lender agrees to allow the borrower to sell the home for less than what he owes on the mortgage. Opting for a deed in lieu of foreclosure means the homeowner hands over his interest in the property to the bank." *Foley,* 772 F.3d at 69 n.3.

to man up and move out." *Id.* ¶ 34. Foley reached out to the Massachusetts Attorney General's Office for assistance in April 2013. *Id.* ¶ 35. The Attorney General's representative connected Foley with a new HPS at Wells Fargo, and Foley received another HAMP application in late May 2013. *Id.* ¶¶ 36-44. In late June and early July 2013, Foley received a third and fourth denial letter from Wells Fargo, stating that he was again denied from HAMP and " a number of mortgage assistance options." *Id.* ¶ 45; *id.* at Ex. 10. The latter stated that Foley was denied due to "excessive financial obligations," although the letters did not explain which debts the bank considered, what rendered them "excessive," or which programs the bank considered. *Id.* ¶ 45; *id.* at Ex. 10. Although Foley's financial hardship conditions had changed since his previous modification request, Wells Fargo's rejections were identical. *Id.* ¶ 71. Foley contacted Wells Fargo again and, dissatisfied with the bank's answers, again spoke with the Office of the Attorney General. *Id.* ¶¶ 47-51. In mid-July 2013, a bank representative called Foley in response to Foley's request to the Office of the Attorney General. *Id.* ¶ 53. The representative told Foley that he was rejected from all modifications, including HAMP and MAP. *Id.* Foley, presumably now aware of the settlement, specifically asked the representative if he had been considered for MAP2R. *Id.* The representative said that Foley had not been considered for MAP2R; later, this representative told Foley that as he had been rejected from other modification programs, he had also been rejected from MAP2R. Doc. No. 59 ¶¶ 53, 80.

   D. **Litigation History**

"With the threat of foreclosure looming, Foley filed a pro se suit in Plymouth Superior Court in Massachusetts." *Foley*, 772 F.3d at 70. Foley's complaint alleged breach of contract (Count One), violation of Mass. Gen. Laws ch. 244, §§ 35A and 35B (Count Two), violation of

Mass. Gen. Laws ch. 93A (Count Three), and breach of the covenant of good faith and fair dealing (Count Four). Doc. No. 9 at 3-21.

> Foley alleged that the bank misled him about his rights under the settlement agreement, misguided him during the modification process, and altogether ignored his modification requests. Foley's complaint ultimately sought specific performance of the settlement agreement and some unspecified damages. Foley also moved for a temporary restraining order and preliminary injunction, in an effort to stave off the foreclosure scheduled to take place about a week later.
>
> Wells Fargo removed the case to federal court, where Foley renewed his motion for preliminary injunctive relief. In opposing the injunction motion, Wells Fargo submitted a letter dated July 30, 2013. The letter stated that Foley was denied HAMP relief because his monthly loan payment would amount to 58 percent of his gross monthly income. . . .
>
> After a hearing on Foley's motion for injunctive relief, the district court temporarily enjoined Wells Fargo from foreclosing on Foley's home, pending an evidentiary hearing on the motion. While the injunction motion was in abeyance, Wells Fargo moved to dismiss Foley's complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), to which Foley filed a written opposition.

*Foley*, 772 F.3d at 70-71. The case was then reassigned to a different district judge. Doc. No. 27. The Court denied Foley's motion for a preliminary injunction, Doc. No. 32, and dismissed Foley's action in its entirety three weeks later, Doc. Nos. 33, 34.

The district court dismissed Foley's contract claims (Count One for breach of contract and count four for breach of the covenant of good faith and fair dealing), relying on a letter Wells Fargo submitted which evidenced that Wells Fargo had considered Foley for MAP2R. Doc. No. 34 at 8-9, 11-13. The Court dismissed Count Two for violation of Mass. Gen. Laws ch. 244, §§35A and 35B because it found that the Home Owners' Loan Act ("HOLA") preempted these state statutes. *Id.* at 9-11. The Court dismissed Count Three for violation of Mass. Gen. Laws ch. 93A because Foley failed to send Wells Fargo a demand letter, which is a jurisdictional prerequisite to suit. *Id.* at 11.

Foley quickly obtained counsel and filed an appeal with the First Circuit. Doc. Nos. 35, 36. Foley did not appeal the district court's dismissal of his chapter 93A claim. The First Circuit decided Foley's appeal in November 2014, Doc. No. 46, reversing in part the district court's dismissal. The First Circuit upheld the district court's dismissal of Count Two for violation of Mass. Gen. Laws ch. 244, §§ 35A and 35B, but on a different basis. The First Circuit explicitly declined to consider whether HOLA preempted these statutes, but found that Foley failed to state a claim under either statute, because he failed to plead which of the statutes' many requirements he believed Wells Fargo violated.

Upon remand, the clerk reassigned the case to the undersigned. Doc. No. 55. Foley again filed for a preliminary injunction, seeking to enjoin Wells Fargo from foreclosing on his home. Doc. No. 64. Wells Fargo failed to submit an opposition to the preliminary injunction, despite the Court's allowance of a motion for an extension of time to file. Doc. No. 72. At the motion hearing, the Court issued a temporary restraining order, enjoining Wells Fargo from foreclosing Foley's home until the Court resolved his motion for a preliminary injunction. Doc. No. 73. At the motion hearing, Wells Fargo raised the issue of transfer for the first time in litigation, although at this point it had been over one and a half years since Foley first filed his action in Plymouth Superior Court in August 2013. Doc. No. 59 at 106-11.

II.     **Wells Fargo's Motion to Transfer**

Wells Fargo seeks to transfer the case pursuant to 28 U.S.C. § 1404(a), contending that the Northern District of California retained "exclusive jurisdiction" over disputes arising from the Pick-A-Payment class action settlement. Doc. No. 81 at 6-8. The proposed settlement agreement included exclusivity language: "The Parties agree that the Court shall retain *exclusive* and continuing jurisdiction over the Lawsuit, the Parties, Settlement Class Members, and the

7

Settlement Administrator in order to interpret and enforce the terms, conditions, and obligations under this Agreement." Doc. No. 81-2 at 92 (emphasis added). However, the Court Order approving the settlement agreement omitted any reference to exclusive jurisdiction: "This Court [the Northern District of California] will retain continuing jurisdiction to interpret and enforce the settlement agreement." Doc. No. 81-1 at 5. Although the Northern District of California retained the ability to hear cases arising from the settlement, the Northern District of California did not purport to assert *exclusive* jurisdiction in its Order.

Private parties cannot divest a federal court of jurisdiction, *Lum v. Carnival Cruise Lines*, No. C-97-2241-VRW, 1998 WL 118188, at *1 (N.D. Cal. Feb. 27, 1998) ("The scope of the federal courts' powers are defined only by the Constitution, Congress or the courts themselves."), and Wells Fargo cited no opinion or order from the Northern District asserting exclusive jurisdiction over claims alleging violations of the settlement agreement (and the Court's own research has identified no such decisions). Moreover, class counsel in the Northern District of California took the position, in response to this Court's inquiry, that they "do[] not have the resources to represent every Class Member who wishes to pursue individual claims against Wells Fargo." Doc. No. 102 at 2 n.1. In these circumstances, this Court has jurisdiction to hear Foley's claims and Wells Fargo has not met their burden of proof to transfer a case concerning real property located in this district to the Northern District of California. Therefore, Wells Fargo's Motion to Transfer is DENIED.

### III.  Wells Fargo's Motion to Dismiss

Having decided to retain this action, the Court now turns to Wells Fargo's partial Motion to Dismiss, challenging Counts Two and Three of Foley's complaint, for violations of Mass. Gen. Laws ch. 244, §§ 35A and 35B and Mass. Gen. Laws ch. 93A, respectively.[4]

#### A. The Home Owners' Loan Act preempts Mass. Gen. Laws ch. 244, §§ 35A and 35B.

Foley's second count against Wells Fargo alleges violations of Mass. Gen. Laws ch. 244, §§ 35A and 35B. Judge Saylor found that these statutes were preempted by the federal Home Owners' Loan Act ("HOLA"). Doc. No. 33 at 10-11. Without reaching this issue, the First Circuit upheld dismissal on a different basis – that Foley failed to state a claim under either statute, because he failed to plead which of the statutes' many requirements he believed Wells Fargo violated. *Foley,* 772 F.3d at 78. Foley, now represented by counsel, amended his formerly pro se complaint to cure this deficiency. Doc. No. 59 ¶¶ 63-64. He has now adequately pled a claim under Mass. Gen. Laws ch. 244, §§ 35A and 35B. The Court now turns to the question of whether these statutes are preempted by HOLA.[5] They are. This claim is DISMISSED for the following reasons.

Judge Saylor found that HOLA preempted Mass. Gen. Laws ch. 244, §§ 35A and 35B. Nothing in the First Circuit's opinion disturbs the reasoning that Judge Saylor articulated. Additionally, neither Foley's amendments to his complaint nor the papers submitted by the

---

[4] Wells Fargo does not challenge Count One for breach of contract and Count Four for breach of the implied covenant of good faith and fair dealing, as the First Circuit found that Foley adequately pled these claims.

[5] Foley asserts that Wells Fargo waived its preemption defense when Wells Fargo agreed to settlement terms requiring that Wells Fargo "apply . . . *any applicable state laws.*" Doc. No. 90 at 19. However, the First Circuit explicitly rejected a similar argument in *Tompkins,* finding that such a "provision does not approach the type of clear and express language typically required for waiver of a known right." *Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 97 (1st Cir. 2000).

parties undermine Judge Saylor's analysis. I find Judge Saylor's reasoning persuasive and adopt and concur in Judge Saylor's conclusions.

Two further points require discussion. First, Foley argues that sections 35A and 35B are not the types of laws preempted by HOLA. Doc. No. 90 at 8-10. This is incorrect. As Foley alleges, section 35A imposes restrictions on acceleration of foreclosure proceedings and section 35B requires reasonable steps to avoid foreclosure, both of which are provisions regarding the "terms of credit" or "servicing" of loans, and are not fairly categorized as state laws "only incidentally affect[ing] the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." 12 C.F.R. § 560.2 (2015).

Second, Foley points out that the Dodd-Frank Wall Street Reform and Consumer Protection Act, provides that "[n]otwithstanding the authorities granted under [HOLA], this chapter does not occupy the field in any area of State law," 12 U.S.C. § 1465 (2012), thus "diminish[ing] the extent to which HOLA and its implementing regulations may preempt state law," *Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 91 n.9 (D. Mass. 2012). Foley concedes Dodd-Frank has no retroactive application. Doc. No. 90 at 14; *see also* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 4, 124 Stat. 1375, 1390 (2010) ("Except as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after the date of enactment of this Act."). In March 2005, when Foley obtained the mortgage at issue, federal regulations explicitly "occupie[d] the entire field of lending regulation for federal savings associations" and therefore preempted any state laws purporting to address lending. *Sturgis*, 863 F. Supp. 2d at 91 (quoting Office of Thrift Supervision regulations). Therefore, "[b]ecause the [plaintiff's] loans were consummated before Dodd-Frank was enacted or effective, the new preemption standard is

10

inapplicable in the instant case." *Sturgis*, 863 F. Supp. 2d at 91 n.9; *see also Henning v. Wachovia Mortgage, FSB*, 969 F. Supp. 2d 135, 146 (D. Mass. 2013) (ruling that "[c]ourts have uniformly held . . . that the provisions of Dodd-Frank are not retroactive, and HOLA preemption applies to mortgages originated before either July 21, 2010 or July 21, 2011.") Thus, HOLA preempts Mass. Gen. Laws ch. 244, §§ 35A and 35B with respect to Foley's mortgage, and the Court ALLOWS Wells Fargo's motion to dismiss Count Two of Foley's complaint.

### B. Foley adequately pled a claim under Mass. Gen. Laws ch. 93A, § 9.

Foley also brings a claim under Mass. Gen. Laws ch. 93A, § 9, Massachusetts' consumer protection statue. Although HOLA broadly preempted state lending regulations, HOLA did not preempt state laws that prescribe general legal duties applicable to all businesses. *Dixon v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 336, 357-58 (D. Mass. 2011) (finding that HOLA did not preempt plaintiffs' promissory estoppel claim). HOLA does not necessarily preempt "general deceptive practices statutes" such as chapter 93A. *Sturgis*, 863 F. Supp. 2d at 97-98 (finding that HOLA preempted Mass. Gen. Laws ch. 244, §§ 35A, 35B but did not necessarily preempt chapter 93A). Although chapter 93A has some effect on lending, it is "not designed to regulate lending and do[es] not have a disproportionate or otherwise substantial effect on lending." *Dixon*, 798 F. Supp. 2d at 358.

HOLA does not preempt chapter 93A claims "where the purported violation was based on breach of contract." *Id.* (citing *Yeomalakis v. FDIC*, 562 F.3d 56, 61 (1st Cir. 2009)). Foley's chapter 93A claim centers on allegations of breach of the settlement. Therefore, HOLA does not preempt Foley's chapter 93A claim.

Wells Fargo also challenges Foley's chapter 93A claim on the basis that Foley has failed to "plead any facts to establish a bad faith breach, or attempted to plead a claim for breach of the

implied covenant of good faith and fair dealing." Doc. No. 95 at 2.  Although "a mere breach of contract is insufficient to sustain a chapter 93A claim," at least one other court has found a plaintiff stated a claim for unfair or deceptive practices where a bank "'disregarded' the agreement, refused to modify the loan, and instead initiated foreclosure proceedings." *Stagikas v. Saxon Mortgage Servs., Inc.*, 795 F. Supp. 2d 129, 137 (D. Mass. 2011).  As a Class B plaintiff, Foley was entitled to have Wells Fargo consider him not only for a HAMP modification but also a MAP2R modification.  Additionally, the settlement required Wells Fargo to abide by "certain 'servicing commitments,' created, according to the agreement, '[i]n order to ensure that Borrowers are appropriately considered for a MAP2R Modification in a timely manner.'  The agreement required, for instance, that Wells Fargo provide class members with clear, written explanations of modification denials, and in any foreclosure-related communications, a notification that the borrower was still being considered for a modification." *Foley,* 772 F.3d at 69.

      Foley alleges that he submitted three applications for a modification under HAMP, and he received two letters notifying him that he had been rejected from HAMP and two letters notifying him that he had been rejected from any other modification options due to "excessive financial obligations."  Although Foley's financial hardship conditions had changed, Wells Fargo rejected him from other modification options for an identical reason and did not explain which debts the bank considered or what rendered them "excessive."   Wells Fargo also failed to describe which modification options Wells Fargo considered, and did not mention MAP2R.

      During one of Foley's many phone calls with Wells Fargo, a bank representative told Foley that he was not considered for MAP2R; later, this representative told Foley that, as he had been rejected from other modification programs, he had also been rejected from MAP2R.  Foley

never received a clear, written explanation as to why Wells Fargo denied Foley a modification under MAP2R, as the settlement allegedly required. Therefore, Foley has pled facts that are sufficient to state a claim under chapter 93A.

Finally, although Wells Fargo argues that Foley failed to allege how Wells Fargo has harmed him, Foley has alleged that Wells Fargo sought to foreclose on Foley's home repeatedly. In fact, Wells Fargo currently opposes Foley's motion for a preliminary injunction enjoining Wells Fargo from foreclosing on Foley's home. Doc. No. 82. Mass. Gen. Laws ch. 93A, § 9(1) provides for injunctive relief. Although Foley has failed to plead what "damages" he might be entitled to, if any, Foley adequately alleged entitlement to injunctive relief under ch. 93A. For these reasons, the Court DENIES Wells Fargo's motion to dismiss Count Three of Foley's complaint.

**IV.    Foley's Motion for a Preliminary Injunction**

Wells Fargo seeks to foreclose on the property at issue. Doc. Nos. 64, 82. Foley requests that the Court enjoin Wells Fargo from such a foreclosure. Doc. No. 64. First Circuit precedent guides the Court to "apply the federal preliminary injunction standard in a diversity case, at least where the parties have not suggested that state law supplies meaningfully different criteria."[6] *Lanier Prof. Services, Inc. v. Ricci*, 192 F.3d 1, 3 (1st Cir. 1999). The federal standard requires a plaintiff to show: "(1) it is substantially likely to succeed on the merits of its claim; (2) absent the injunction there is a significant risk of irreparable harm; (3) the balance of hardships weighs in its favor; and (4) the injunction will not harm the public interest." *Id.* "The *sine qua non* of that formulation is whether the plaintiff[ is] likely to succeed on the merits." *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993). Foley has established that he is likely to succeed on the merits

---

[6] Because Foley satisfies all of four of the federal requirements, his contention that he need only satisfy three requirements under state law is moot.

of his breach of contract claim, in which he alleges that Wells Fargo breached the settlement by failing to properly consider him for a MAP2R modification.

As Wells Fargo noted in its Opposition, Judge Saylor denied Foley's pro se preliminary injunction motion. Now represented by counsel, Foley submitted the motion currently before the Court and attached an affidavit (which was not submitted by the pro se Plaintiff to Judge Saylor), wherein Foley calculated that he should have been eligible for a MAP2R modification per the settlement. Doc. No. 64. In his affidavit, Foley followed the MAP2R "waterfall" process detailed in the settlement,[7] Doc. No. 83-7 at 36-39, and detailed his calculations by line item. In its Opposition, Wells Fargo does not dispute the calculations in Foley's affidavit. Wells Fargo did submit an affidavit in support of its Opposition, Doc. No. 83, but that affidavit lacks the underlying numerical data that drove Wells Fargo's decisions to deny Foley a loan modification. Instead, Wells Fargo's affidavit merely repeats the reasoning the bank has given to Foley throughout this dispute – that Foley was denied from HAMP "because Wells Fargo was unable to create an affordable payment equal to or less than 42% of Foley's gross income" and Foley was denied under MAP2R "because his income was too low." Doc. No. 83 ¶ 16. On this record, Foley has met his burden of proof to establish a likelihood of success on the merits.

It is clear that absent the injunction there is a significant risk of irreparable harm to Foley. Wells Fargo does not dispute that it seeks to imminently foreclose on the property, and, moreover, Wells Fargo does not dispute that foreclosure would constitute irreparable harm to Foley. Wells Fargo argues instead that the balance of hardships and the public interest favors Wells Fargo. On the contrary, the Court finds that the hardship that Wells Fargo alleges (paying

---

[7] The Court acknowledges that the waterfall process does not automatically entitle Foley to a 2% interest loan. If Foley's debt-to-income (DTI) ratio can be reduced to less than 31% before the interest rate floor of 2%, Wells Fargo is not required to lower the rate further. Doc. No. 83-7 at 75 (describing step 6). At this time, the Court also takes no position as to the correct amount of Foley's outstanding loan balance.

Foley's "property taxes and insurance in order to maintain its mortgage lien and protect the value of its collateral," in addition to continuing to not receive payback on its debt, Doc. No. 82 at 2) "does not outweigh, or begin to approach, the type of harm [Foley] would suffer if the [foreclosure] proceeds." *De Vico v. U.S. Bank*, No. CV 12-08440 MMM FFMX, 2012 WL 10702854, at *6 (C.D. Cal. Oct. 29, 2012). Furthermore, as the Court found that Foley has established a likelihood of success on the merits, the Court finds that the public interest of enforcing class action settlements suggests that this factor favors Foley as well.

Although the balance of hardships favors Foley, this is only so where Foley begins to pay his mortgage again. Wells Fargo suggested that if the Court granted Foley's Motion for a Preliminary Injunction, the Court should require Foley to "pay the accruing monthly mortgage payments into the Court's registry as security against Wells Fargo suffering additional harm." Doc. No. 82 at 22. However, Wells Fargo did not state what amount per month Foley should pay. Foley suggested that the Court should require him to pay $1,377.86 per month (the amount Foley calculated as the mortgage payment for which he would have been eligible under MAP2R). Doc. Nos. 89 at 3, 64-2 at 2. Foley shall begin paying this amount on the first of each month effective Monday, July 1, 2015. If Wells Fargo disagrees with this amount, it must file with the Court, within fourteen days, the amount that it requests Foley pay to the Court's registry, accompanied with calculations similar to the calculations performed in Foley's affidavit, Doc. No. 64-2, at 2.

V.  **Conclusion**

For the foregoing reasons, the Court ORDERS:

1. The Motion to Transfer, Doc. No. 80, is DENIED;

2. The Motion to Dismiss, Doc. No. 85, is ALLOWED as to Count II and DENIED as to Count III (leaving Counts I, III and IV pending);

3. The Motion for a Preliminary Injunction, Doc. No. 64, is ALLOWED, Wells Fargo as well as its agents are hereby ENJOINED from foreclosing on Plaintiff Jonathan Foley's home located at 61 Ocean Drive, Unit 61, Hull, Massachusetts;

4. Plaintiff Foley shall pay $1,377.86 per month effective July 1, 2015, toward the mortgage;

5. The Parties shall submit a joint report within fourteen days proposing whether these payments by Foley shall be deposited with the Clerk or a custodian as well as whether any party proposes a different amount;

6. Wells Fargo shall answer the Complaint within seven days;

7. The Court will hold a Rule 16 Conference on June 29, 2015 at 3:00 p.m.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge